UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 5:11 CR 536 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |
| VIRGIL HILL, | ) | |
| | ) | |
| Defendant. | ) | |

This case comes before the Court on Defendant, Virgil Hill's Motion to Reduce Sentence - 821 Amendment.. (ECF #760). The Court appointed counsel to review Mr. Hill's case and they filed a Supplement captioned Motion to Reduce Sentence Under 18 U.S.C. §3582 and Guideline §1B1.13. (ECF #770). The Government filed a Response in Opposition to the motion. (ECF #774).

## FACTUAL AND PROCEDURAL HISTORY

Mr. Hill is a 37 year old man. When he was 25 years old, he pled guilty to three drug-trafficking counts, including admitting to the purchase of at least 2-1/2 kg of cocaine from a co-conspirator, which was converted to crack cocaine and redistributed around Stark County. He also admitted to conspiring to distribute at least 840 grams, but less than 2.8 kg. of cocaine base, and obtaining and redistributing between 100 and 400 grams of heroin. As part of the plea agreement, the government agreed to eliminate one enhancement for a prior felony drug offense, which reduced his mandatory minimum sentence from life to 240 months. The parties agreed to recommend a 240 month sentence to the Court at the time of sentencing. (ECF #253).

At sentencing, the Court found that Mr. Hill had a total offense level of 33, with a criminal history category of VI, which resulted in an imprisonment range of 240-293 months under the United States Sentencing Guidelines ("USSG").   (ECF #330, 771).  He was sentenced to the statutory minimum sentence of 240 months. (ECF #343, 352).  The Court of Appeals for the Sixth Circuit affirmed Mr. Hill's conviction and sentence. (ECF #457, 458).  Mr. Hill launched several post-convictions challenges to his sentence, including a prior motion for compassionate release.  (ECF # 499, 521, 577, 590, 601, 605, 676   Each was denied or withdrawn.  (ECF #515, 524, 589, 602, 611, 688).

Subsequent to the issuance of Mr. Hill's judgment, there have been two changes to the law that could potentially have affected his sentencing range.  First, in 2014, the U.S. Sentencing Commission enacted Amendment 782, which reduced the base offense level for drug trafficking cases by two levels.  Based on this offense level, based on the plea agreement he received, his total offense level could have been reduced to 31.  This would have changed his advisory guideline range from 240-293 months, to 188-235 months.  It would not, however, have reduced his statutory minimum sentence of 240 months, and, therefore, standing alone, would not have altered his sentence.

The second change came in 2018, when Congress passed the First Step Act, reducing the mandatory minimum sentence associated with a section 851 enhancement from 20 years to 15 years.  See, 18 U.S.C. §841(b)(1)(A).  This would have changed the mandatory minimum sentence for the conduct set forth in the plea agreement to180 months.  There is no way to know whether the government would have agreed to a 180 month sentence in the plea agreement, however.  With the mandatory minimum lowered, the revised sentencing range established in

2

Amendment 821 would come into play. Assuming the plea agreement had not been affected, this would have brought the sentencing range down to 188-235 months. Mr. Hill's sentence would then be five years more than the mandatory minimum, and five months more than the top of the applicable guideline range.

## ANALYSIS

A. Retroactivity of Mandatory Minimum Sentences

Subsequent to Mr. Hill's sentencing, Congress amended the penalty structure applicable to conduct Mr. Hill pled admitted to in his plea agreement, effectively reducing the mandatory minimum for Mr. Hill's offenses from 240 months to 180 months. However, despite having the opportunity to do so, Congress did not make the relevant revisions retroactive. "Federal sentencing law presumes that changes in sentencing law are not retroactive." *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022)(citing *United States v. McKinnie*, 24 F.4th 583, 587 (6th Cir. 2022)); *see also, Dorsey v. United States*, 567 U.S. 260, 280, 132 S. Ct. 2321 (2012)("ordinary practice is to apply new penalties to defendants not yet sentenced."). In fact, Congress has codified this presumption, enacting a statute to make it absolutely clear that legislation is not retroactive unless Congress expressly provides for retroactive application in the legislation.

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability[1] incurred under such statute, unless the repealing

---

[1] The terms "penalty," "forfeiture," and "liability" apply to criminal offenses. *See, United States v. Reisinger*, 128 U.S. 398, 9 S. Ct. 99 (1888); *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 94 S. Ct. 2532 (1974). The §109 savings clause applies whether the revisions relax or tighten the penalties at issue. See, e.g., *Warden, 417 U.S. 653; United States v. Blue Sea Line*, 553 F.2d 445 (5th

Act shall so expressly provide, and such statute shall be treated as still remaining
in force for the purpose of sustaining any proper action or prosecution for the
enforcement of such penalty, forfeiture, or liability.

1 U.S.C. §109.   The term "repeal" in §109 includes statutory amendments or revisions that lower

the penalties for criminal offenses.  *See, e.g., Dorsey v. United States,* 567 U.S. 260, 272 (2012);

*Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653, 659 (1974).[2]

Congress did not provide, expressly or by necessary implication, that it apply

retroactively to defendants like Mr. Hill who were sentenced prior to the enactment of the

revisions.   "[W]e must assume that Congress did *not* intend" for the First Step Act to apply

retroactively in a Defendant's case "unless they clearly indicated to the contrary."  *United States*

*v. Carpenter*, 80 F.4th 790, 791 (6ᵗʰ Cir. 2023)(citing *United States v. Hughes*, 733 F.3d 642, 644

(6ᵗʰ Cir. 2013)(emphasis in the original).   Therefore, the post-judgment statutory changes do not

apply retroactively in his case.  1 U.S.C. § 109*.  See, United States v. Jackson*, 995 F.3d 522,

524-25 (6ᵗʰ Cir. 2021).

B.  Compassionate Release

A sentence of imprisonment "constitutes a final judgment," and a district court is

generally prohibited from "modify[ing] it once it has been imposed."  18 U.S.C. §3582(b)-(c);

_____

Cir. 1977).

   [2] The United States Supreme Court has held that despite the clear use of the term
"expressly provide," in the savings statute, Congress itself may repeal the earlier statute,
exempt the current statute from the general application of an earlier statute, modify the
earlier statute, or apply the earlier statute with modifications, and may express this intent
expressly or by necessary implication. *Dorsey*, 567 U.S. at 273-274.

*McCall* at 1055; *see also, Dillon v. United States*, 560 U.S. 817, 824, 130 S. Ct. 2683 (2010).

The only exceptions to this rule are specifically delineated within the statute itself.  18 U.S.C.

§3582(b)-(c).  One of the exceptions authorized by 18 U.S.C. §3582(c)(1)(A), is often referred to

"Compassionate Release."

Prior to December of 2018, a defendant could not directly petition the court for a

reduction of sentence under 18 U.S.C. §3582(c)(1)(A).   With the passing of the First Step Act,

Congress authorized defendants to file their own motion petitioning the court for a modification

of their term of imprisonment once they had "fully exhausted all administrative rights to appeal a

failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or [after]

the lapse of 30 days from the receipt of such request by the warden of the defendant's facility,

whichever is earlier."  18 U.S.C. §3582(c)(1)(A).  Following the passage of the First Step Act,

the Sixth Circuit had held that the policy statements set forth in USSG. §1B1.13 were not

"applicable" policy statements that a court must consider when deciding a compassionate release

motion brought directly by an inmate.  *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021);

*United States v. Jones,* 980 F.3d 1098, 1109 (6th Cir. 2020).   "Until the Sentencing Commission

updates §1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to

determine whether an 'extraordinary and compelling' reason justifies compassionate release

when an imprisoned person files a §3582(c)(1)(A) motion." *Jones* at 1109.

On November 1, 2023, the Sentencing Commission updated the policy statement in

USSG. §1B1.13, to address the changes that had been made to 18 U.S.C. §3582(c)(1)(A)(i)

through the First Step Act.   The amendment expanded the policy statement, and clarified that it

should be applied both to motions filed by the BOP and to motions filed directly by defendants. "Among other things, the amendment extends the applicability of the policy statement to defendant-filed motions; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing 'other reasons' catchall; provides specific guidance with regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act." See, USSG Supplement to App. C at 205 (Nov. 1, 2023) . In order to grant relief under 18 U.S.C. §3582(c)(1)(A), whether addressing a request by the BOP or made directly by an inmate, the Court must now find that the reduction "is consistent with applicable policy statements issued by the Sentencing Commission," in addition to finding that there are extraordinary and compelling reasons warranting relief, and considering the §3553(a) factors.

Mr. Hill is asking this Court to apply one of the USSC's revised policy statements as it considers his motion for Compassionate Release. Section 1B1.13 now reads, in relevant part:

(a)     Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. §3582(c)(1)(A), the court may reduce a term of imprisonment... if, after considering the factors set forth in 18 U.S.C. §3553(a), to the extent they are applicable, the court determines that

(1)     (A)     extraordinary and compelling reasons warrant the reduction; or

(B)     the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. §3559(c) for the offense or offenses for which the defendant is imprisoned;

(2)     the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(G); and

6

(3)     the reduction is consistent with this policy statement.

(b)     EXTRAORDINARY AND COMPELLING REASONS – Extraordinary and
compelling reasons exist under any of the following circumstances or a
combination thereof:

. . .

(6)     UNUSUALLY LONG SENTENCE – If a defendant received an
unusually long sentence and has served at least 10 years of the term
of imprisonment, a change in the law (other than an amendment to
the Guidelines Manual that has not been made retroactive) may be
considered in determining whether the defendant presents an
extraordinary and compelling reason, but only where such change
would produce a gross disparity between the sentence being served
and the sentence likely to be imposed at the time the motion is
filed, and after full consideration of the defendant's individualized
circumstances.

USSG §1B1.13 (Nov. 1, 2023).

Because more than thirty days has passed since he submitted a request for compassionate release to the warden at his facility, he satisfies the jurisdictional threshhold.  (ECF #137-2). *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020).   He has served more 12 years of his sentence, slightly beyond the ten years required by the policy statement.  The law governing his offense conduct has changed such that, if he were to be sentenced for the same conduct today, his sentence could be as low as 15 years, rather than the twenty years he received.  However, as defined by USSG §1B1.13(b)(6), his circumstances are not extraordinary and compelling.  His twenty year sentence is long, but not unusually long for a person with his criminal history category, and history of drug offenses.  Further, the five year difference in the applicable mandatory minimum sentences does not represents a gross disparity between the sentence he received and the sentence he would receive if he had been sentenced under the newly enacted

7

laws.  This is especially true, when the sentence Mr. Hill received is only five months more than the high end of the applicable guideline range created by the non-retroactive changes to the law. Further, Mr. Hill agreed to a specific sentence of 240 months in his plea agreement. There is no way to determine whether the government, under the circumstances of Mr. Hill's case, would have agreed to a plea if the sentence were likely to be 180 months instead of 240 months.

Further, even if the Court were to find that there was an unusually long sentence, and a gross disparity between Mr. Hill's sentence and the sentence he would be subject to under the law as it exists today, to grant the requested relief, the Court would have to override the statutory sentencing structure in place at the time of his sentencing.  That statute established a mandatory minimum sentence of 240 months.  Applying §1B1.13(b)(6) to grant the relief requested, would require the Court to either disregard the mandatory minimum entirely, or to retroactively apply a penalty structure that Congress determined should not be retroactive.  It would also mean disregarding the holding in *McCall*, a Sixth Circuit opinion that is binding on this Court.  56 F.4th 1048.   The Court is not convinced that the USSC had the authority to override Congress' decision to deny retroactive application of the changes to defendants in Mr. Hill's circumstances,[3] or to supercede the Sixth Circuit's decision in *McCall.*

C.  Authority of the Sentencing Commission

The Legislature created the United States Sentencing Commission ("USSC") under 28 U.S.C., Chapter 58, §991 as an "independent commission in the judicial branch of the United

---

[3]  Refusing to apply such changes to statutory minimum, based solely on the timing of a person's offenses, may seem unfair, but Sixth Circuit has held that enforcing 1 U.S.C. §109 and denying application of newly revised non-retroactive lower sentencing laws does not violate a defendant's right to due process or equal protection. *United States v. Turner*, 456 Fed. Appx. 545, 548 (6th Cir. 2012).

States." 28 U.S.C. §991(a).   Congress is permitted to delegate rule-making authority to a body

within the judiciary so long as the rules are "not inconsistent with the statutes or constitution of

the United States." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9-10 (1941); *see also, Mistretta v.

United States*, 488 U.S. 361, 387 (1989).   Though the Commission is posited in the judicial

branch, the Guidelines promulgated by the Commission make political and substantive decisions.

 *United States v. Booker*, 543 U.S. 220, 243 (2005).  The United States Supreme Court has held

that this does not raise a separation of powers concern because the USSC is fully accountable to

Congress and Congress can revoke or amend any of the Guidelines as it sees fit. *Mistretta*, 488

U.S. at 394.  Further, the Guidelines do not "involve a degree of political authority inappropriate

for a nonpolitical Branch" because "they do not bind or regulate the primary conduct of the

public or vest in the Judicial Branch the legislative responsibility for establishing minimum and

maximum penalties for every crime." *Mistretta,* 488 U.S. at 396.  Rather, the Commission is

tasked with performing "nonadjudicatory functions that do not trench upon the prerogatives of

another Branch." *Id.*  at 388.

One of the governing purposes of the USSC is to "provide certainty and fairness in

meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among

defendants with similar records who have been found guilty of similar conduct" 28 U.S.C.

§991(b)(1)(B); 28 U.S.C. §994(f).   To accomplish this goal, the USSC is tasked with

promulgating Guidelines for a sentencing court to use when determining what sentence to impose

in a criminal case.  28 U.S.C. §994(a)(1).  The Commission is also authorized to promulgate

general policy statements regarding the application of the Guidelines including the appropriate

9

use of the sentence modification provisions in 18 U.S.C. §3582(c); 28 U.S.C. §994(a)(2)(C).

These Guidelines and general policy statements must be "consistent with all pertinent provisions

of any Federal statute." 28 U.S.C. §994(a); *see also*, 28 U.S.C. §994(b)(1).

When assessing whether the Commission is acting within the scope of its delegated

authority, courts follow basic administrative law concepts, regardless of the Commission's

placement within the judicial branch. *See, Stinson*, 508 U.S. at 45.  Like any agency, however, it

does not have the authority to modify or enact statutes of its own accord. *See, Neal*, 516 U.S. at

290. "Only the people's elected representatives in Congress have the power to write new federal

criminal laws." *Davis*, 139 S. Ct. at 2324.  This extends to the establishment of criminal

punishments.  The Commission's interpretation of the Guidelines is not given weight if it

violates the Constitution or a federal statute, or if it is plainly erroneous or inconsistent with the

Guideline. *Stinson* at 45; *see also*, *Bowles*, 325 U.S. 414.

The Commission has a continuing duty to review and modify Guidelines based on new

information. 28 U.S.C. §994(o).  It may also "make recommendations to Congress concerning

modification or enactment of statutes relating to sentencing, penal, and correctional matters that

the Commission finds to be necessary and advisable to carry out an effective, humane and

rational sentencing policy." 28 U.S.C. § 995(a)(20).[4]

---

[4] The Commission has recognized its inability to act on its own to override
Congressional sentencing decisions and advocated for changes when it believes Congress'
decisions were unjustified or did not advance the goals of proportionality and uniformity.
For example, the USSC asked Congress to change legislation affecting crack and powder
cocaine sentences for years, but did not take it upon themselves to override Congressional
decisions in the meantime. *See generally, Dorsey v. United States*, 567 U.S. at 262-
263(outlining the legislative history of the Fair Sentencing Act)

Specifically relevant to this case, Congress directed the USSC to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. " 28 U.S.C. §994(t).  Congress did not define what qualifies as an "extraordinary and compelling" reason that would warrant a sentence reduction. 18 U.S.C. §3582(c)(1)(A)(i).  The only explicit restriction Congress included in the authorizing statute was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

D.  Validity of  USSG §1B1.13(b)(6)

In 2022, pursuant to 28 U.S.C. §994(t), the USSC promulgated amendments to the Sentencing Guidelines Manual including modifications to the policy statement set forth in Section 1B1.13.  88 Fed. Reg. 28,254, 28,254-28, 281 (May 3, 2023).  The change that is most relevant to Mr. Hill is sub-part (b)(6), which purports to allow a court, under certain circumstances, to consider changes in the law when determining whether "extraordinary and compelling" reasons warrant a sentence reduction under 18 U.S.C. §3582(c)(1)(A).[5]

1. Applicability of the Sixth Circuit's Decision in *McCall*

The policy statement does not differentiate between retroactive and non-retroactive changes in the law.  However, if a change in law is retroactive, it would be applied without need for relief under 18 U.S.C. §3582(c)(1)(A).  Therefore, the policy statement necessarily refers to

---

[5] Changes in the law may only be considered if they produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.  The defendant must also have received an unusually long sentence, and must have served at least ten years of the term of imprisonment.

11

consideration of case law and legislation that was not made retroactive by its authors.[6]    This

puts the Commission's policy statement at odds with *United States v. McCall*, 56 F.4th 1048.  In

*McCall*, the Sixth Circuit concluded, based on the plain language of 18 U.S.C. §3582(c)(1)(A),

that "[n]onretroactive legal developments, considered alone or together with other factors, cannot

amount to an "extraordinary and compelling reason" for a sentence reduction."  *McCall* at 1065-

1066.  The holding was unambiguous and emphatic: "Nonretroactive legal developments do not

factor into the extraordinary and compelling analysis.  Full stop."  *Id.* at 1065.

The *McCall* Court found that the phrase "extraordinary and compelling," is unambiguous,

holding that "there is nothing extraordinary about the ordinary operation of our legal system,

which assumes new statutes and caselaw have no retroactive effect."  *Id.* at 1063.  It also

analyzed the authorizing statute, 28 U.S.C. §994(t), determining that the authorization to describe

criteria for determining "extraordinary and compelling reason" and to list examples, did not

explicitly or implicitly include authorization to include non-retroactive changes among the

"extraordinary and compelling reasons" that could justify relief.  *McCall*, 56 F.4th at 1060-1061,

1063-1066.

Although the *McCall* opinion unabashedly declares that the statutory language

"extraordinary and compelling" is unambiguous, and does not leave room to consider non-

retroactive changes to the law, it notes that Congress has delegated the task of describing "what

should be considered extraordinary and compelling reasons" to the Commission.  *McCall*, 56

---

[6] While purporting to allow a finding of extraordinary and compelling reasons based on non-retroactive changes made through case law or acts of Congress, the USSC explicitly excludes its own non-retroactive amendments to the Guidelines Manual from being considered an extraordinary and compelling reason for sentence reduction. §1B1.13(b)(6).

F.4th at fn 3.  It also declined to resolve the question of whether an inconsistent interpretation of the statute, promulgated by a new policy statement, would override the Court's opinion.  *Id.* *McCall's* citation to *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982, and *United States v. Home Concrete & Supply, LLC*, 566 U.S. 478 (2012) suggests an answer, however.  In *Nat'l Cable*, the United States Supreme Court held that a "court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms fo the statute and thus leaves no room for agency discretion."  *Nat'l Cable at 982*.  *McCall* very clearly held that the term "extraordinary" in 18 U.S.C. §3583 (c)(1)(A)(i) is unambiguous, thereby leaving "no gap for the agency to fill." [7] *Id.*; *McCall* at1062-1063.  The holding in *McCall*, therefore, "displaces [the] conflicting agency construction." *Nat'l Cable* at 983.[8]  Further, even if the statute were ambiguous, *Chevron* dictates that the agency's interpretation must be a "permissible construction of the statute."  *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984).  The entire opinion in

---

[7] *McCall*'s analysis focused primarily on the meaning of "extraordinary," with only passing discussion about the "compelling" requirement. The Court did state that "[t]here is little compelling about the duration of a lawfully imposed sentence." *McCall* at 1056. This statement must be taken within context of the entire discussion in *McCall*. If it were applied strictly and literally, there would be no grounds for relief under 18 U.S.C. §3582(c)(1)(A) anytime a defendant was serving a lawfully imposed sentence.

[8] Query whether by declaring the statutory language unambiguous, *McCall* calls into question the validity of the Commission's interpretation of "extraordinary and compelling" throughout §1B1.13(b).

*McCall* sets about explaining why describing non-retroactive changes in the law as "extraordinary and compelling" is an impermissible construction of that term.[9]

Sixth Circuit law is binding on this Court.  The Sixth Circuit has held that the phrase "extraordinary," as used in 18 U.S.C. §3582(c)(1)(A)(i) is unambiguous, and the requirement of having an "extraordinary and compelling reason" for a sentence reduction cannot be satisfied by non-retroactive changes in the law.  Agency law dictates that if a court holds that statutory language is unambiguous, an agency is precluded from providing a conflicting interpretation of that language.  *Neal*, 516 U.S. at 290, 294 (the Commission does not have the authority "to override the statute as [the court of appeals] has construed it.").[10]  Because the Commission's

---

[9]  The Government notes that the Supreme Court has granted certiorari in *Loper Bright Enterprises v. Raimondo*, No. 22-451, to consider whether the Court's decision in *Chevron* should be overruled.  That decision could alter the degree of deference given to agencies who have been granted implicit interpretive authority.

[10]  Before the adoption of §1B1.13(b)(6), there was a circuit split regarding whether non-retroactive changes in the law could constitute "extraordinary and compelling reasons" for a sentence reduction.  Several defendants sought writs of certiorari with the Supreme Court.  At that time, the Government opposed certiorari arguing that the issue should be left to the Sentencing Commission to resolve.  *See, United States v. Brown*, 2024 U.S. Dist. LEXIS  18673, *16(S.D. Ohio 2024)(collecting cases); *see also*, U.S. SENTENCING COMMISSION, Amendments to the Sentencing Guidelines at 11 (2023)(collecting cases).  The Defendant argues that we should hold the Government to its prior position, and accept that the Commission has the authority to determine this question.  The Court is not bound by the Government's prior position and finds that the current binding case law suggests that the Government was wrong.  If there is a split on whether language within §3582 is unambiguous, the agency cannot make that determination.  The legislature could answer the question through clarifying language in the statue, the Supreme Court could determine which set of circuits correctly classified the language, or the Commission could make recommendations to the legislature to seek a statutory change.  The Commission, however, does not have the authority to interpret unambiguous statutory language, or to override a courts' determination that the language is unambiguous.  If the Commission were able to declare statutory language ambiguous, it could expand its own power.  An agency may not be the arbitrator of its own power. *See Batterton v. Francis*, 432 U.S. 416, 425 (1977). .  "To what purpose are powers limited . . . if these limits, may, at any time, be passed by those intended to be restrained?" *Marbury v. Madison*,

14

inclusion of non-retroactive changes in the law conflicts with the *McCall* holding, this Court is required to treat the agency's interpretation as invalid.  Therefore, Mr. Hill cannot rely on the non-retroactive changes to the sentencing structure to establish extraordinary and compelling reasons for a reduction in sentence, despite its inclusion in USSG §1B1.13(b)(6).

## CONCLUSION

For all of the reasons set forth above, Mr. Hill has not established extraordinary and compelling reasons for relief.   The Sentencing Guideline Policy he relies on the establish extraordinary and compelling reasons for relief is invalid under *McCall*, and, if valid, does not apply in Mr. Hill's circumstances.  Mr. Hill's Motion to Reduce Sentence Under 18 U.S.C. § 3582 and Guidelines §1B1.13 is DENIED.  IT IS SO ORDERED.


DONALD C. NUGENT
United States District Judge

DATE: May 9, 2024

---

5 U.S. (1 Cranch) 137, 176, 178 L. Ed. 60 (1803).

15